Nancy BIGGS, Plaintiff-Appellant,

v.

David C. BIGGS, Defendant-Respondent.

No. 31848.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1965.

Rehearing Denied Dec. 16, 1965.

Bartlett, Muldoon, Stix & Bartlett, Daniel Bartlett, Jr., St. Louis, for plaintiff-appellant.

Boyle, Priest, Elliott & Weakley, Edward Weakley, Aubrey B. Hamilton, St. Louis, for defendant-respondent.

ANDERSON, Judge.

This is a divorce action brought by Nancy Biggs against her husband David C. Biggs. The prayer of the petition was for a divorce; an award of alimony to plaintiff; custody of the three children born of the marriage, with an allowance for their support; reasonable visitation rights to defendant; an attorney's fee for plaintiff's attorney; and, the cost of the proceedings.

Defendant's answer, after admitting his marriage to plaintiff and the birth of three children, denied each and every allegation of the petition.

On November 25, 1964, the court rendered its final judgment. By said decree, plaintiff was granted a divorce; alimony in gross in the sum of $25,000, which, by agreement of the parties, could be satisfied by defendant's transfer to plaintiff of the premises known as and numbered 5370 Waterman Avenue, St. Louis, Missouri; monthly alimony in the sum of $300.00 per month; custody of the three children to plaintiff; child support in the sum of $100.-00 per month for each child; payment by defendant of all school tuition and other school fees, summer camp tuition together with all transportation costs therefor; direction that the parties confer from time to time about proper schools, and camps for children and, failing agreement, to submit such question to the Court for determination; that defendant pay all medical expenses in the case of accident or serious illness of any of the children, and that in such event the parties confer with each other regarding proper treatment; that defendant's obligation to support each child cease after said child shall have reached the age of 21 years, but if defendant die before any of his children reach the age of 21 years, the support of any such child or children should be a charge against defend-

ant's estate, diminished by the amount any child should receive from any trust established prior to defendant's death; reasonable visitation rights to defendant; temporary custody, with certain limitations, in defendant for a period not exceeding thirty days during the school vacation period; authority to take the children out of the City of St. Louis and the State of Missouri, for the purpose of trips, schooling, educational or camp purposes; the sum of $3,000.-00 to plaintiff for attorneys' fees; and the costs of the action against defendant.

Plaintiff filed her motion for new trial. The grounds alleged inadequacy of the court's award of alimony and the payments required for child support; failure to require defendant to pay all necessary hospital expenses, medical expenses, and health insurance fees incurred on behalf of the children. She also complained of the admission of incompetent, irrelevant and immaterial evidence as well as the court's refusal to receive competent, material and relevant evidence offered by her. The court overruled this motion and plaintiff has appealed from provisions of the decree with respect to alimony, support money for the children, and the allowance of attorneys' fees.

Since the decree of divorce is not an issue on this appeal, it will not be necessary to detail the facts brought out in the evidence bearing on that issue.

Plaintiff and defendant were married May 21, 1948. Three children were born of this marriage, David Clifton Biggs, who at the time of the trial (May 16, 1963) was twelve years old, Bruce Goddard Biggs, seven years old at said time, and Christopher Chapman Biggs, five and one-half years old at the time of the hearing. These children were at said time living with plaintiff at a residence owned by defendant at 5370 Waterman Avenue in the City of St. Louis. Plaintiff was 42 years old. She was first married in November 1940 to John Barber Hill from whom she secured a divorce in 1944. Two daughters were

born of this previous marriage, twenty-one and nineteen years old at the time of the hearing below. They were living with plaintiff at the Waterman Avenue address. Plaintiff was awarded $225 a month at their present age for the support of each of these daughters by the court which granted her a divorce from her former husband. According to the decree in that case the support money awarded would terminate when each daughter reached the age of twenty-one years.

The sons attend private schools, David at Rossman's School, Bruce and Christopher at the Wilson School.

The house on Waterman Avenue where plaintiff and her five children live was described by Mrs. Biggs as a typical town house. On the first floor there is a living room, dining room, kitchen, pantry and large entrance hall. On the second floor are three bedrooms and two bathrooms, and on the third floor three bedrooms. It is worth, according to the evidence, $25,-000.00. Defendant has been paying the taxes on this property which amount to $480 a year. Prior to the decree a stipulation was entered into between the parties providing for payments to plaintiff of $575.-00 per month for alimony pendente lite and child support and $600.00 for attorneys' fees on account.

The evidence shows that plaintiff owns securities worth approximately $65,000 which were given to her by Mr. Biggs. In addition plaintiff, at the time of the hearing, owned a Corvair automobile not fully paid for, and more than $12,000.00 worth of jewelry.

She had also owned a 1950 Jaguar automobile, a gift from defendant, which was sold for $700, plaintiff receiving the proceeds of the sale. She had also received a part of the proceeds from the sale of a Brugatti automobile owned jointly by defendant and a friend named Bruce Carson. During the marriage, defendant conveyed to plaintiff a 170 acre farm in Pike County which she sold in 1960 for $15,500 retaining

all but $4400.00, the value of personal property on the farm which belonged to defendant. In 1962, plaintiff received dividends from stock owned by her in the sum of $1500.00. She owes the First National Bank in Clayton $6,800, being the amount of two loans secured by her from said bank, one loan being for $1,800.00 and the other for $5,000.00. Plaintiff maintains a membership in the Sports Car Club, paying dues of about $17.50 per year, and in the Bridlespur Hunt Club. The dues in the latter club amount to $17.00 per month.

At the trial below, plaintiff gave the following estimate of her monthly expenses for herself and the three children:

| | |
|---|---|
| Electricity | $ 25.00 |
| Gas | $ 30.00 |
| Dairy Products | $ 32.00 |
| Groceries | $225.00 |
| Cleaning of Clothing | $ 15.00 |
| Cleaning Woman (who also does ironing) | $140.00 |
| Yard Man, once a week during summer months and a man twice a month during winter months for cleaning porches and basement | $ 35.00 |
| Medical Expense for Children | $ 35.00 |
| Medical Expense for Plaintiff | $ 5.00 |
| Drugs | $ 30.00 |
| Expense of Automobile | $ 20.00 |
| Charitable Contributions | $ 25.00 |
| Sports Car Club | $ 1.15 |
| Bridlespur Hunt Club Dues | $ 17.00 |
| Real Estate Tax on Waterman Avenue House | $ 40.00 |
| Allowances to Children | $ 15.00 |
| Clothing for Children | $ 35.00 |
| Cost of Plaintiff's Clothing | $ 50.00 |
| Total | $775.15 Per Month. |

Plaintiff further testified that she was asking for the support of herself and her three sons $750.00 per month; $200.00 a month for each child and $150 per month for herself. She further testified the figure sought did not include school tuition or summer camp tuition, and was based on the proposition that she would retain the Waterman Avenue house. Under the decree, the Waterman Avenue property may by agreement be transferred to plaintiff in lieu of the payment by defendant of the $25,000 award of alimony in gross. The decree also provides that defendant pay school tuition and summer camp tuition. Defendant has permitted plaintiff and the three

children born of the marriage, as well as plaintiff's two daughters by a previous marriage to reside at the Waterman Avenue address, and has been paying the above mentioned tuition during the period of separation.

Defendant owns two farms in Pike County. One of these farms is referred to in the evidence as "Walnut Valley," consisting of 625 acres and the other as "Clifton Hill" containing 200 acres. These farms were inherited by defendant from his father. Defendant testified that he was a farmer by occupation, and that he supervised the farming operations on these farms. Defendant resides on the Clifton Hill farm. The house on Walnut Valley is occupied by defendant's employee one Edwards, who is paid a salary of $35.00 a week. Defendant also employs a farm manager, Oma Monroe, at a salary of $200.00 per month. On the Walnut Valley farm, at the time of the trial, were 125 cows, some with calves, and approximately 30 head of swine. Defendant testified that the Walnut Valley farm was worth $150.00 per acre, $93,750.00. He further testified that the Clifton Hill farm was worth $150.00 an acre which would amount to a total value of $30,000. He stated that the farm equipment on the Walnut Valley farm was worth seven or eight thousand dollars; that the 125 cows were worth $200 apiece which would amount to a total of $25,000.00; the four bulls on said farm were worth $200.00 apiece; and that the calves, most of them rather young and therefore not of much value. He further testified that the hogs were worth $30.00 apiece which would amount to a total value of $900. He further stated that the Waterman Avenue property was worth $25,000.

Defendant owned a collection of automobiles; two Mercedes Benz, worth three or four thousand dollars each; two Ferraries, one worth $2,000.00 and the other three or four thousand dollars; two Alpha-Romeos worth $2,000.00 each; two Model T. Fords worth two or three hundred dollars each; a German Porsche of the value of $1,500.00; two other cars of no great value; and a part interest worth $1,000.00 in a Mercedes Benz located in Detroit. It thus appears that these automobiles are worth over $20,000.00.

Defendant is the beneficiary of an irrevocable trust created by his mother. During the year 1962, defendant received about $7,753.55 from this trust. The assets in said estate were listed in an exhibit introduced in evidence. This exhibit was not lodged by appellant in this court, hence, we are unable to say what assets are in the estate. Other exhibits were introduced showing the income from this trust estate for the years 1961, 1960, 1959 and 1958, but these exhibits are not before us, not having been lodged in this court by appellant.

Defendant himself, at sometime previous to the trial below, created an irrevocable trust. A copy of this trust instrument was introduced in evidence as plaintiff's Exhibit 14. This exhibit was not lodged in this court by appellant, but from the testimony of Edgar L. Taylor, a trust officer of the Mercantile Trust Company, who stated he had supervision of administering said trust, it appears that the income from said trust was payable to defendant for life, and thereafter to his children. Exhibits were also introduced showing the income from the trust for the year 1958, 1959, 1960 and 1961. These exhibits were not lodged in this court and therefore we are unable to state the amounts revealed by said statements. However, Mr. Taylor when asked if the sum of $2,279.14 was received by defendant from this trust in 1962, replied "that is substantially correct."

Defendant maintains membership in the University Club, Racquet Club, Noonday Club, Sports Car Club and Pike County Country Club.

The joint income tax returns of the parties were introduced in evidence but were not lodged in this court. However, appellant in her brief states, "David and Nancy's 1961 Federal Income Tax return

(Plaintiff's Exhibit 35) reveals that both of these 'farms' owned by Mr. Biggs were operated at a loss of $12,624.81 during the year 1961. Their 1962 return indicates a farm loss of $7,441.31. David testified that not only did the 'farms' not make money in 1961, but that they did not make money in 1960 or 1959. David testified that his full time occupation is that of a 'farmer,' and that he has been so engaged in this occupation for quite some time." Defendant testified that if the income tax return for 1961 showed that he made $26,784.32 in that year such figure was correct, but that his income for the first five months of 1962 was substantially less than that in 1961. It was stipulated that in 1962 defendant received as dividends on stocks owned by him the sums of $5,945.70, and that if the dividend rate was not changed he would receive that amount in 1963. In that event he would receive from dividends and from the trust estates the total sum of $16,978.39. At the time of the trial the market value of the stocks was stipulated to be $178,000.00.

Defendant had been previously married, and at the time of the trial was under obligation for the support of two children by said prior marriage in the sum of $480.00 per month. Defendant was also responsible for a $4,000.00 dental bill incurred by plaintiff after the separation. He also owed $42,247.09 at the First National Bank of Clayton, the annual interest payments amounting to $1,896.12.

■ Points I and II of the points relied on, which are set forth in appellant's brief under the heading "points and authorities," do not comply with Civil Rule 83.05(e), being mere abstract statements of law without showing how they relate to any action or ruling of the court. However, since it is apparent from that portion of appellant's brief denominated "argument" that under said points appellant is attempting to raise the issue of inadequacy of the award of alimony and child support, we will not, on account of the nature of the case, enforce the rule, but will examine the complaints

thus made. Milanko v. Austin, 362 Mo. 357, 241 S.W.2d 881.

Under point I it is urged that the awards fall short of allowing plaintiff the minimum amount ($750) which she testified without contradiction was necessary for her support and the support of the children. It would appear therefore that she is asking this court to increase the awards so that they will total $750.00.

As heretofore stated plaintiff was awarded $25,000.00 alimony in gross and in addition $300 per month. She was also awarded $100.00 per month for the support of each child. It was also provided that defendant should pay for each child all school tuition fees, including text books, sport equipment, lunches and transportation to and from school. The decree also provided for the payment by defendant of expenses of each child at whatever summer camp he might attend, including the expense of transportation to and from such camp. There was also a provision that defendant pay all medical and nursing fees in case of accident or serious illness of any of the children. The decree further provided that the obligation of support should be a charge against defendant's estate should he die before said child should reach his majority, reduced by the amount accruing to the benefit of such child from any trust established by defendant or others prior to his death or under his last will and testament.

■ An award of alimony to a wife who obtains a divorce from her husband is based purely upon a statute. Sec. 452.070 RSMo 1959, V.A.M.S. Its allowance is not automatic, but discretionary with the court, which discretion is to be exercised in the light of all the relevant facts and circumstances revealed by the evidence. Therefore in an appeal by the wife where she contends that the amount allowed is inadequate, it must affirmatively appear that this discretion has been abused before the appellate court will be moved to interfere. Knebel v. Knebel, Mo.App., 189 S.W.2d 464; Viertel v. Viertel, 212 Mo. 562, 111

S.W. 579. An abuse of discretion is an erroneous finding and judgment which is clearly against and contrary to the facts or the logical deductions from the facts and circumstances before the court; which is untenable and clearly against reason which works an injustice, and not justified by the evidence. Harriman v. Harriman, Mo. App., 281 S.W.2d 566.

■ The guide posts for determining the question of the proper exercise of discretion in such matters are set out in an opinion of this court in Knebel v. Knebel, supra. Those are detailed as follows, " * * * the financial status of the respective parties, including the question of their individual estates, incomes, obligations, and necessities; the contributions of each to the accumulated property; the probable future prospects of each; their respective ages, health, and ability to follow gainful occupations; their stations in life; their children, if any, and the disposition made with respect to their custody; the duration of the marriage, and whether it was one of affection or convenience; and the conduct of the parties, with particular regard to the cause of the divorce, and the relative or comparative responsibility of each therefor."

■ After considering the needs of the wife, the allowance for the support of the children, the amount of property owned by plaintiff and the income therefrom and the ability of the defendant to pay, we think the award of alimony evidences a judicial discretion soundly exercised. It is well within the rules announced in approved cases. There was no abuse of discretion.

■ We hold the same view with reference to the allowance of $300 for the support of the children. It must be borne in mind that the three hundred dollar allowance is not the only expense for which defendant is liable under the decree. We have heretofore set out those items and for that reason will not dwell on them further.

On account of the ages of the children we believe the provision of the decree adequate. If through change of conditions a greater allowance is called for plaintiff has her remedy by a motion to modify.

■ Appellant's next point is that the court erred in failing to require defendant to furnish security for the payment of alimony and child support. The authority for such an order is found in § 452.070 RSMo 1959, V.A.M.S. Whether this should be done rests within the sound discretion of the trial court. Slaughter v. Slaughter, Mo.App., 313 S.W.2d 193. The record fails to show that defendant has failed to pay the amounts allowed by the court as alimony pendente lite. He has permitted plaintiff and the children to remain in the town house, and he himself has paid the taxes. We cannot say there is a likelihood that he will fail to comply with the provision of the decree. We fail to find an abuse of discretion in the matter. Slaughter v. Slaughter, supra.

■ Appellant's final point is that the court erred in refusing to admit into evidence the U. S. Income Tax returns for the years 1959 and 1960. Appellant has not lodged these exhibits with this court. We therefore do not know the contents of these exhibits. As a general rule the allowance for alimony and child support is to be based upon the financial condition of the husband and father at the time the award is made. 27B C.J.S. Divorce § 319(5), p. 614. The decree in this case was rendered November 25, 1963. Regardless of the financial condition shown by the returns for the years 1959 and 1960, we must hold that there was no prejudicial error committed by the trial court in their exclusion.

The judgment appealed from is affirmed.

WOLFE, P. J., and WOODSON OLDHAM, Special Judge, concur.