Helen L. NAEGER, Respondent,

v.

Gerald J. NAEGER, Appellant.

No. 36626.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Sept. 28, 1976.

David L. Colson, Colson & Wagner, Farmington, for appellant.

Charles W. Medley, Farmington, for respondent.

ALDEN A. STOCKARD, Special Judge.

· At the mutual request of Helen L. Naeger and Gerald J. Naeger their marriage of seventeen years was dissolved. The trial court awarded maintenance and child support and directed a division of the marital property. The husband has appealed. We affirm.

The trial court awarded custody of the four children of the parties to the wife, respondent, and decreed that the husband pay to respondent the sum of $45.00 per week as support for each child, and $90.00 per week as maintenance for respondent. There is no issue on this appeal as to the award of custody.

Appellant was engaged in the retail sale of mobile homes. In addition to the house in which the parties have lived, other property had been accumulated during the marriage. The marital property was divided by the trial court as follows:

### To the Husband

| | Estimated Value |
|---|---|
| A trailer sales lot or lots | $ 30,600.00 to $ 31,500.00 |
| The stock in C & H Mobile Homes, Inc. | $ 44,078.17 to $ 52,649.00 |
| All debts of C & H Mobile Homes, Inc., owed to appellant in amount between $21,000.00 and $30,000.00. (Since appellant owns all the stock in C & H Mobile Homes, Inc., we do not include this amount in determining the total award to appellant.) | |
| General Electric Reserve Account | $ 9,737.00 |
| Bank of St. Louis Reserve Account | $ 11,004.09 |
| Bank of St. Louis Reserve Account for C & H Mobile Homes, Inc., not reflected in corporate financial statement | $ 6,954.24 |
| General Acceptance Corporation Account | $ 300.00 |
| Community Federal Savings Reserve Account for C & H Mobile Homes, Inc., not reflected in corporate statement | $ 11,213.96 |
| TOTAL: | $113,887.46 to $123,358.29 |

### To the Wife

| | |
|---|---|
| The marital home—valued at $19,500.00 to $35,000.00, but subject to a deed of trust in the amount of $6,958.88 | $ 12,541.12 to $ 28,041.12 |

To the Wife

| | |
|---|---|
| Forsyth Acres—valued at $31,900.00 to $45,000.00, but subject to a deed of trust in the amount of $19,500.00 | $ 12,400.00 to $ 25,500.00 |
| Household furnishings (No value stated) | |
| Founder's Mutual Fund Certificate | $ 1,105.00 |
| Cash | $ 27,920.00 |
| | TOTAL: $ 53,966.12 to $ 82,566.12 |

Appellant was also directed to assign to respondent as trustee for the children several insurance policies, and he is to pay the premiums until each child reaches the age of eighteen years at which time he is relieved of paying one-fourth of the premium due on each policy.

Appellant first contends that the trial court erred in awarding child support in the amount of $180.00 per week, maintenance in the amount of $90.00 per week, attorney fees in the amount of $1,800.00, and "expenses" in the amount of $267.84 "for the reason that said allowances are in excess of [his] ability to pay and in excess of the need of the children at the present time." The item of "expenses" consisted of "one-half of cash advances by [respondent's attorney] in [respondent's] behalf in this action." Appellant requests that this court enter or direct a judgment "appropriately decreasing such allowances."

We note that appellant does not contend that the award to respondent for maintenance is in excess of her needs. The charge of excessiveness is limited to the award of child support. In its determination of the amounts for child support the trial court should consider the reasonable needs of the children for food, clothing, the expense of education and medical attention, and the ability of the father at the time the award is made to meet those needs. *Larison v. Larison,* 524 S.W.2d 159 (Mo.App. 1975). In this determination "both his present and past earnings" may be considered, *Page v. Page,* 516 S.W.2d 537 (Mo. App.1974), but the award is not to be greater than the husband's ability to pay. *McM v. McM,* 506 S.W.2d 14, 16 (Mo.App.1974).

Respondent testified at length concerning the needs of the children and what those needs would cost. The burden of demonstrating error and the incorrectness of the judgment below is upon appellant. *Suesserman v. Suesserman,* 539 S.W.2d 741 (Mo.App.1976). However, we find nothing in appellant's brief in either the statement of facts or in argument concerning the needs of the children or which in anyway indicates that the award for child support is in excess of the reasonable needs. Appellant does not challenge any particular item testified to by respondent, but only asserts in his brief that "The expenses submitted by [respondent] were obviously exaggerated." This allegation does not prove itself. Appellant has totally failed to demonstrate that the award for child support was in excess of the reasonable needs of the children.

This leaves only the contention that the total award for maintenance, child support, attorney fees, and "expenses" is in excess of appellant's ability to pay. We note that he does not contend that he should not be required to pay the attorney fees for respondent, or that the award of $1,800.00 as attorney fees is excessive if the total of it and the other awards are within his ability to pay.

Appellant first argues that the court erred in considering evidence of his earnings for the calendar year 1972. Apparently his position is that this was too remote. However, as previously noted, in its determination of appellant's ability the trial court was entitled to consider past earnings.

We find it extremely difficult to determine from the record appellant's net worth

or his income with any degree of confidence. He owned all the stock in C & H Mobile Homes, Inc. The tax return for the year ending October 31, 1973 showed corporate assets in excess of $190,000.00 and sales of $1,042,415.00. The net worth of the corporation as of October 31, 1972 was $52,649.00 but an operating loss for the following year would reduce that amount to approximately $44,000.00. The corporation was also shown to owe appellant from $21,000.00 to $30,000.00. For tax purposes it may be important that the money is owed to appellant, but since he owns all the stock of the corporation the value of the debt owed to him would be reflected in the net worth of the corporation. Two bank accounts were carried in the name of the corporation, but appellant asserted that they were his personal assets. They totaled $20,741.02. Appellant also owned one-half interest in Holiday Mobile Homes, Inc., which he sold just prior to the trial for $5,000.00. A personal financial statement filed by appellant with Community Federal Savings and Loan showed his net worth as of October 31, 1973 to be $211,645.54. As a part of that statement the value of the Holiday Mobile Homes stock was listed at $15,000.00. Appellant gave no explanation as to why he sold his stock for $5,000.00.

Appellant's income is also rather indefinite. The record frequently refers to gross income instead of net income. In appellant's statement of facts, he makes reference only to an "adjusted income for the calendar year of 1972" of $22,531.00, and to the "gross income" of $11,500.00 for the period January 1, 1974 to October 8, 1974, less approximately $1,500.00 for tax withholding and social security. In his testimony he admitted a "gross income" of $24,000.00 for the year 1973. He also testified that he set his own salary to be paid from C & H Mobile Homes, Inc., but that since January 1, 1974 to the time of trial, March 27, 1974, there had been a substantial decline in the sales of mobile homes with a resulting reduction of income to the corporation. There were, however, other things shown by the record. Appellant had a personal checking account at a bank at Bloomsdale, and deposits were made by him from June 2, 1972 to October 20, 1973, totalling more than $48,000.00. He explained that this was a "wash-out account." As we understand his explanation, he would write a personal check to persons who purchased a mobile home for the furniture or other item taken in on trade, and the purchaser would endorse the check to C & H Mobile Homes as part payment for the purchase of the mobile home. The corporation then would reimburse appellant the identical amount. There is no explanation of what becomes of the personal property and whether a profit or loss results from its disposition. Reference is made in respondent's brief to a withdrawal of $14,000.00 by appellant from a bank in Nixon, Missouri, supposedly shown by "Ex. JJ." We find no such exhibit and it is not indexed in the transcript. Also appellant had received one-half of the earnings of Holiday Mobile Homes, and it appears that the total earnings from August 7, 1972 to September 30, 1973 was about $12,000.00.

The total of the awards for maintenance, child support, and the expenses of the litigation appears to be liberal. But, the determination of the amount of maintenance and of child support is a matter resting in the sound discretion of the trial court, *Murray v. Murray,* 538 S.W.2d 587 (Mo.App.1976), and we review the record only to determine whether that discretion was abused. *Fugate v. Fugate,* 510 S.W.2d 705 (Mo.App.1974). The burden is, of course, on appellant to demonstrate an abuse of discretion, and in view of the indefiniteness of the record as to appellant's precise net worth and his actual income, we cannot determine that there has been an "abuse of discretion * * * based upon an erroneous finding and judgment which is clearly against and contrary to facts or the * * * circumstances before the court * * *." *Fugate v. Fugate,* supra 510 S.W.2d at 707.

Appellant next asserts that the trial court erred in its division between the parties of the marital property. In his point he lists all the property itemized above that was

awarded to respondent except the cash item, and he also lists a Shasta camper, a Ford automobile, three motorcycles, and "$10,000.00 cash." Appellant has listed the items set forth in a judgment entered on October 9, 1974, which was changed by an amended judgment entered on November 8, 1974, and which will be discussed subsequently. He asserts that this division of the marital property is erroneous because it "constituted a clear and manifest abuse of judicial discretion by depriving [him] of the necessary property from which to generate income to pay support for the minor children and ex-wife." Appellant argues that the taking of the real estate known as Forsythe Acres will serve only to deprive him of the use of the land in conjunction with his business for the production of income to pay support for his family. He also argues that the reserve accounts were used in conjunction with the operation of the business of C & H Mobile Homes, Inc. as well as the Shasta trailer and automobile.

The Shasta trailer, automobile and motorcycles were awarded to respondent with the provision that if appellant did not cause title to be transferred from C & H Mobile Homes, Inc. to respondent within ten days he should pay her specified sums of money. The transfers were not made and the court entered an amended judgment awarding respondent cash in lieu of the motor vehicles. Apparently the trailer, the automobile and the motorcycles are to remain the property of C & H Mobile Homes, Inc.

With five exceptions, none here being applicable, § 452.330 Laws of Mo. 1973, p. 470, defines "marital property" as "all property acquired by either spouse subsequent to the marriage." The parties apparently agree that all the property affected by the judgment is marital property. In dividing the marital property the trial court is to consider "all relevant facts" including (1) the contribution of each spouse to its acquisition, (2) the value of the property set aside to each spouse, (3) the economic circumstances of each spouse including the desirability of awarding the family home to the spouse having custody of the children, and (4) the conduct of the parties during the marriage. Appellant does not challenge the division of the property on the basis of any of the four items specifically mentioned in the statute. The only contention is the general assertion that some of the property was used in connection with the business of C & H Mobile Homes, Inc. He does not demonstrate in what manner the transfer to respondent of the property would result in disproportionate harm to him.

■ Our careful study of the 280 page transcript convinces us that the division of the marital property as ordered by the trial court was just and proper when we give due consideration to the four relevant factors set forth in § 452.330.

Appellant's final contention is that the trial court "had no jurisdiction" to amend the original judgment, dated October 9, 1974, by entering a new judgment on November 8, 1974, because Rule 73.01(c) prohibits an amendment of a judgment "on motion of a party" more than fifteen days after its entry.

■ Rule 73.01(c), in effect at the time of trial, provided that "Upon motion of a party made not later than 15 days after entry of judgment the court may amend the judgment and opinion." We first note that we do not know when respondent's motion to amend the judgment was made or filed. All that is revealed by the transcript is that respondent served notice on appellant's attorney on November 7 of her intention to have the court consider her motion to amend, and that appellant objected to the court considering the motion, not because it was made more than 15 days after the entry of judgment, but "for failure to give proper notice of hearing to amend." The trial court then entered an order in which it recited that "having considered the matter" it "amends the Judgment Entry of October 9, 1974 as per Judgment Entry filed." However, assuming that respondent's motion was made more than 15 days after the entry of the judgment the trial court, pursuant to Rule 75.01, retained control over its judgment "during the 30 day period after entry of judgment"

and it could within that time "for good cause" vacate, reopen, correct, amend or modify the judgment. There is no contention that the court did not have good cause to vacate the previously entered judgment and to enter a new judgment incorporating amendments and changes. The court had jurisdiction to do what it did, if not by reason of Rule 73.01(c), then by reason of Rule 75.01.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.