In re The MARRIAGE OF Sara DEATH-
ERAGE and Paul R. Deatherage.

Sara Deatherage,
Petitioner-Respondent-Appellant,

and

Paul R. Deatherage,
Respondent-Appellant-Respondent.

Nos. 10892, 10893.

Missouri Court of Appeals,
Southern District.

Jan. 21, 1980.
Rehearing Denied Feb. 15, 1980.

H. Lynn Henry, Henry, Henry & Henry, West Plains, for petitioner-respondent-appellant.

Eugene E. Reeves, Ward & Reeves, Caruthersville, R. Jack Garrett, Garrett & Butts, West Plains, for respondent-appellant-respondent.

MAUS, Judge.

In this dissolution proceeding the court made the following awards to the petitioner wife upon her motion for temporary maintenance, child support and attorney's fees: for maintenance $2200 per month; for support of the 18 year old son $350 per month; for support of the 15 year old son $300 per month; $3500 for attorney's fees and $500 for suit money. The wife appeals contending the allowances were too low. The husband appeals contending they were too high. The appeals were consolidated.

The parties agree that an appeal lies from this order. However, an order not otherwise appealable cannot be made so by agreement. An appeal lies from a "final judgment". § 512.020 V.A.M.S. Ordinarily orders made upon motions are not of that character. Cases are not to be presented for appellate review in "piecemeal" fashion. However, historically it has been recognized: "The power of the court to order and enforce an allowance for alimony pendente lite, though an adjunct of the action of divorce, is an independent proceeding, standing upon its own merits, and in no way dependent upon the merits of the issues in the divorce suit, or in any way affected by the final decree upon those merits." *State ex rel. Gercke v. Seddon*, 93 Mo. 520, 522–523, 6 S.W. 342, 343 (1887). A long line of cases before the adoption of the Dissolution of Marriage Act have held orders granting temporary maintenance and support in actions for divorce and separate maintenance appealable. *McCarthy v. McCarthy*, 329 S.W.2d 236 (Mo.App.1959); *Glaze v. Glaze*, 311 S.W.2d 575 (Mo.App. 1958); *Bradley v. Bradley*, 295 S.W.2d 592 (Mo.App.1956); *Meredith v. Meredith*, 151 S.W.2d 536 (Mo.App.1941). The Dissolution of Marriage Act does not expressly deal with the question. § 452.315 V.A.M.S., authorizing restraining orders, temporary injunctions and orders for temporary maintenance and support, in subsection 6(2) expressly provides that restraining orders and temporary injunctions may be revoked or modified prior to final decree upon the same basis as the modification of a *final* decree under § 452.370. This section is si-

lent concerning revocation or modification of orders for temporary maintenance and support. However, § 452.370 provides in part "any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Because of the differences in historical background and statutes involved, cases from other jurisdictions, the majority which hold such orders appealable, are of little precedential value.[1] 4 Am.Jur.2d, Appeal and Error, § 138. There are arguments pro and con concerning whether or not such orders should be appealable. The "pro" arguments, primarily because of the argument of the need for a right of appeal from an oppressive order, seem to preponderate. By the inter-relation of § 452.315 and § 452.370, it appears to have been the intent of the legislature to cause the orders authorized by § 452.315 to be final, except for changed conditions. This is mandated to prevent the trial court from being bombarded with a series of such motions amounting to nothing more than dissatisfaction with the previous action of the court. With such orders bearing that degree of finality, they should be final judgments for the purpose of appeal. The Missouri Court of Appeals, Eastern District, has held such orders made under the Dissolution of Marriage Act to be appealable. *Richardson v. Richardson*, 524 S.W.2d 149 (Mo.App.1975).[2] This court does likewise.

The parties were married in 1957. They had two children: John, age 18 and Ted, age 15. Since the separation, which preceded the filing of the petition, the wife continued to live in the family home. The husband has lived in an apartment. The children are in the custody of the wife, although the older is attending a university.

The husband has practiced his profession of dentistry for 21 years. Prior to the birth of the first child the wife was employed in general office work. She has no training beyond high school and has not worked for 18½ years. She had no immediate plans for employment or furthering her education as she felt she should be at home with the younger child.

Although the wife owns a 37½ interest in a corporation that owns and operates a motel, she has no income from that source. The husband also owns a 37½ interest. Since 1971 the husband has received the income from both interests. There was no indication in the record this practice would change. The corporation is a "Small Business Corporation" under the Internal Revenue Code. The wife has savings and checking accounts of undisclosed amounts. The husband has a substantial income from his profession, from the motel corporation and securities. The parties own other non-income producing property. By the use of income tax returns for 1971 through 1976 the wife prepared a schedule showing the husband's gross income and net income from his profession and the motel and the adjusted gross income from those sources and his investment income. From the latter figures for each year she has subtracted the income taxes and then added their share of the depreciation of the business assets. The results are denominated as the husband's spendable income for each year. In 1976 the figure was shown to be $70,819.53. By adding retirement plan contributions and tax free interest (not included in the previous figures) she projects an average annual spendable income for those six years of $105,990.02. The husband acknowledged the accuracy of the schedule with the exception of the figures representing spendable income. He disputes those

1. *Husband v. Wife*, 367 A.2d 636 (Del.1976); *Tobey v. Tobey*, 165 Conn. 742, 345 A.2d 21 (1974); *Castor v. Castor*, 165 Ind.App. 520, 333 N.E.2d 124 (1975); *Micelli v. Micelli*, 45 Ill. App.2d 159, 195 N.E.2d 233 (1963); *In re Marriage of Winegard*, 257 N.W.2d 609 (Iowa 1977); *Clay v. Clay*, 550 S.W.2d 730 (Tex.Civ. App.1977).

2. Also see *In re Marriage of Burris*, 557 S.W.2d 917 (Mo.App.1977) in which it was held error to award "back support" in a final decree in favor of a wife who had not filed a motion for temporary maintenance.

figures by pointing out principal payments on motel indebtedness, the Deatherage portion of which is $2025 per month or $24,300 per year. The husband has additional indebtedness upon which no principal payments are required and none shown to be contemplated in the near future. He also argues that the amount of depreciation should not be added in determining his spendable income. At the hearing he pressed this contention by pointing out in a general way that the amount of depreciation will decrease each year. The decrease between 1975 and 1976 was approximately $4000. However, all other factors remaining constant, any such decrease will result in a correspondingly higher net income which, less any increase in income taxes, may be considered in determining available resources. Upon appeal the husband, without citation of authority, also argues that depreciation should not be considered an available resource. These are cases indicating that the amount of depreciation is in toto to be considered as an available asset, *Commonwealth ex rel. ReDavid v. ReDavid*, 251 Pa.Super. 103, 380 A.2d 398 (1977); *Commonwealth ex rel. Rankin v. Rankin*, 170 Pa.Super. 570, 87 A.2d 799 (1952), and others that it should not be considered at all. (depletion) *Brackob v. Brackob*, 265 Wis. 513, 61 N.W.2d 849 (1953); *Sylvan v. Sylvan*, 373 P.2d 232 (Okl.1962). See Annotation 1 A.L.R.3d 295. The extent to which depreciation should be considered an available resource would seem to depend upon the nature of the asset being depreciated and the need to apply the allowance for depreciation to improvement or replacement to maintain the production of income. *Commonwealth v. Miller*, 202 Pa.Super. 573, 198 A.2d 373 (1964). These determinations are of greater significance in fixing maintenance and support in a final decree than in fixing temporary allowances. This decision does not require the adoption of any standard or detailed analysis of the allowance involved, which could not be accomplished on the record before the court, as irrespective of such a determination the record establishes the husband's ability to pay the allowances.

The parties enjoyed a high standard of living. Their style of life included a four-bedroom home, several automobiles, and numerous social, recreational and civic activities. The husband in particular enjoyed extensive domestic and overseas travel. As the trial court remarked in announcing his decision, "the standard of living is indeed on a scale that is unparalleled in this area literally, with the possible exception of one or two people." The wife presented a projection of her annual needs which she based upon an average of expenditures over the past several years. This list included such items as $4000 for college expenses, $5640 for home maintenance, repair and furnishings, $7500 for income taxes, and $3000 for clothing. These anticipated needs totaled $42,000 or $3500 per month which she would allocate as $2600 for her maintenance and $450 for each child. The husband did not agree and estimated the domestic expenses at $4500 per year plus $600 per month household allowance which totaled $11,700. He did not include in these figures expenditures for the university, income taxes or major home maintenance. The only figures of the wife he specifically questioned were: $250 for personal property tax instead of $1250 and $488 for house and automobile insurance instead of $1000. The husband did not present any estimate of or figures concerning his living expenses. It is with this background the trial court fixed the allowances.

A motion for an order for temporary maintenance and child support is authorized by § 452.315. An order for maintenance is to be made in conformity with § 452.335 which prescribes the findings that are a prerequisite to an order of maintenance and the factors to be considered in fixing the amount and terms of that maintenance. An order for support is to be made in conformity with § 452.340 which prescribes the factors to be considered in determining "an amount reasonable or necessary" for the support of a child. These factors have been considered and applied in innumerable appellate cases. In this case no contention has been made that the wife

has the means or ability to provide her own maintenance or the support of the children. The paramount issue is the determination of the amount necessary to meet the "reasonable needs" for that maintenance and support. By statute both in regard to maintenance, § 452.335 Subsection 2(3), and in regard to support, § 452.340(4), the court in fixing the amount is directed to consider the standard of living established during the marriage. *Butcher v. Butcher*, 544 S.W.2d 249 (Mo.App.1976); *O'Brien v. O'Brien*, 485 S.W.2d 674 (Mo.App.1972). This factor is of particular importance where the marriage has been of a lengthy duration. *Brueggemann v. Brueggemann*, 551 S.W.2d 853 (Mo.App.1977). However, while the same does not appear controlling in this case, the amount is to be tempered by the husband's ability to pay. *In re Marriage of Duboc*, 559 S.W.2d 250 (Mo.App. 1977). In determining this ability, both present and past earnings may be considered. *Naeger v. Naeger*, 542 S.W.2d 344 (Mo.App.1976).

The scope of this court's review of court tried cases generally is limited by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Review of temporary allowances is to be had with regard to the fact that "[t]rial courts historically are clothed with broad discretion in determining the amount to be awarded as maintenance, and this court reviews the record only to determine if a manifest abuse of such discretion appears." *In re Marriage of Duboc*, supra, 559 S.W.2d at pp. 252–253. The burden of demonstrating an abuse of such discretion is upon the party who complains of the trial court's action. *Naeger v. Naeger*, supra.

In this case the wife presented an itemized estimate of her needs for maintenance and support based upon an annual average of expenditures for those purposes over the past several years. Her estimate was questioned only in respect to a few specific items and generally by the husband's estimate, based on expenditures for the past several years, that a reasonable amount for household expenses, car expenses, insurance and "everything involved", except college expense, major maintenance on the house and income taxes, would be $4500 per year, plus the $600 per month allowance he had given the wife. It should be noted that including $7500 for income taxes and $4000 for college expenses, the husband's estimate would total $23,200 per year. Of course, the trial court was not required to and obviously did not accept the estimate of either party. *Morris v. Morris*, 549 S.W.2d 363 (Mo.App.1977). The husband argues the court did not make a specific finding concerning his ability to pay and the order is thereby fatally defective. No request was made for such a specific finding under Rule 73.01 V.A.M.R. and none was required. *Butcher v. Butcher*, supra. The husband further argues that the court's comments on the itemized expenses such as "$900 for the hairdresser—I don't know" and "$3000 for tithes—I don't know" are tantamount to a finding that such items were determined not to be necessary. The record does not give these comments that significance. Rather the court was "thinking out loud" for the benefit of the parties in arriving at a determination of reasonable need and did not accept the estimate of either party. The husband cites *Hall v. Hall*, 553 S.W.2d 864 (Mo.App.1977) and *Farnsworth v. Farnsworth*, 553 S.W.2d 485 (Mo.App.1977). Neither aids his position as in each the wife was employed and in neither was the standard of living demonstrated to be comparable with that presented in this case. Also, in *Farnsworth*, upon a motion to modify, the husband had assumed the obligation of a new family. *Hall* might well be cited by the wife as the husband's net income was $54,000 and the wife had employment which would net $430 per month, yet an allowance of $700 per month maintenance and $1060 per month for the support of three children was approved. While in each the husband's resources were greater, other comparable cases are *Butcher v. Butcher*, supra, in which a wife with independent income of $200 per year and net investment income of $1,621.90 per month was granted maintenance of $1000 per month and *In re Marriage of Duboc*, supra, in which the wife

was granted temporary maintenance of $3500. Also see *In re Marriage of Cornell*, 550 S.W.2d 823 (Mo.App.1977); *D___ M___ S___ v. P___ E___ S___*, 526 S.W.2d 361 (Mo.App.1975). Although liberal in amount, there was evidence from which the trial court could determine the allowances in this case were consistent with and "related to the standard of living of the parties during the marriage." *Butcher v. Butcher*, supra, 544 S.W.2d at p. 254. The trial court could have also considered that the allowance for maintenance is in part based upon projected expenditures of a substantial amount which will redound to the benefit of the husband as well as the wife. The allowances are within the limits of the husband's ability to pay. "When the trial court makes an award, temporary in nature and not extending beyond the final hearing of the case, we are extremely cautious about altering it, . . . ." *Glick v. Glick*, 336 S.W.2d 528, 531 (Mo.App.1960). In regard to the wife's appeal, the trial court was not required to accept her estimate without qualification. Neither party has demonstrated the trial court abused its discretion in fixing temporary maintenance and child support. Both parties also complain about the allowance of $3500 to the wife for attorney's fees. At the time of the hearing the wife had been billed for 46¾ hours. The granting of such fees is within the "considerable discretion" of the trial court. *In re Marriage of Ebinger*, 573 S.W.2d 738, 742 (Mo.App.1978). Contrary to the facts in *Ortmann v. Ortmann*, 547 S.W.2d 226 (Mo.App.1977), cited by the husband, he is financially able to pay the wife's attorney's fees. Again, neither party has demonstrated an abuse of discretion. The action of the trial court is affirmed.

All concur except HOGAN, J., recused.